## McLEOD v. SNYDER, *Plaintiff in Error.*

### Division One, May 23, 1892.

1. **Sale of Land:** JOINT NOTES FOR PURCHASE PRICE, ACTION ON. One of two joint payees of a note can transfer all of his interest in a note to his co-payee or a third person; such transfer does not infringe the rule against assigning a part of a debt without the consent of the debtor.

2. **Bond for Title:** JOINT OWNERS: ACTION ON NOTES. Where a joint bond for title is made by equal owners of land and notes are given for the purchase price, there can be no recovery on the notes where the entire title of both obligors is not tendered to the purchaser.

3. **Practice:** PARTIES. The heir of plaintiff's co-obligor was a proper party in order to secure a complete divestiture of title, and the refusal of the court to make him a party at defendant's request was error.

4. ———: ———. The court has the power to join third persons as parties to the suit where such joinder is necessary to a complete determination of the controversy.

*Error to Chariton Circuit Court.*—HON. G. D. BURGESS, Judge.

REVERSED AND REMANDED.

*T. S. Dines* with *A. W. Mullins* for defendants in error.

(1) The undisputed evidence shows that the plaintiff was the absolute owner and the holder of the notes sued on, and that no other person had any interest whatever in and to the same. (2) Defendant cannot hold the lands and refuse to pay the purchase money.

*Crumb v. Wright*, 97 Mo. 14; *Smith v. Busby*, 15 Mo. 388; Bigelow on Estoppel [3 Ed.] 429. (3) Where there is no fraud alleged the purchaser of land with covenants for title who is in undisturbed possession will not be relieved from the payment of purchase money on the mere ground of defect in the title. *Mitchell v. McMullin*, 59 Mo. 252; *Connor v. Eddy*, 25 Mo. 75; *Wheeler v. Standley*, 50 Mo. 509; *Cooley v. Rankin*, 11 Mo. 643.

SHERWOOD, P. J.—Wm. O. McLeod and Benjamin H. Shipp, by a conveyance made to them, having become the joint and equal owners of a certain tract of land in 1881, sold the same in May, 1883, to James A. Snyder, the defendant, for the sum of $5,000, and contracted to make him a good title, he to pay $500 cash which he did, executed his four several promissory notes to McLeod and Shipp jointly, payable December 1, 1883, for $500, and the other notes for $1,333.33 each, payable respectively December 1, 1884, December 1, 1885, and December 1, 1886. McLeod and Shipp made Snyder a title bond to, and he afterwards was placed in possession of, the land by McLeod and Shipp, and paid off the two notes first falling due, and made valuable and lasting improvements on the premises. Shipp transferred his interest in the notes to parties who subseqently transferred the same to McLeod. After transferring his interest in the notes, Shipp died leaving a widow and one child surviving him.

In 1887, McLeod brought his ordinary civil action on the two promissory notes yet remaining unpaid, in which he alleged the transfer of Shipp's interest in the notes to third parties and their transfer to him.

The first count of the answer of the defendant admitted the execution of the notes, but denies the other allegations of the petition.

The second count sets up the contract of sale as aforesaid, the delivery of the purchased notes, the execution by McLeod and Shipp of the contract of sale, and the entry and taking possession of the land by defendant on the faith of the contract, and also that a clerical mistake had occurred in the contract, and that defendant had tendered to plaintiff and paid into court the balance of the purchase money due, but alleges that plaintiff refused to accept said money or to make defendant a deed complying with the contract.

The answer also sets up that Shipp was in his lifetime seized of the undivided one-half of the land in controversy, but had died, leaving a widow and one child, who survived him, and asks that they be brought in and made parties to the suit. The answer also renews the tender theretofore made, and prays that plaintiff be compelled to procure and deliver to defendant good and sufficient deeds to the land, before he be allowed to prosecute his suit, and for general relief.

The reply admits the execution of the notes to plaintiff and Shipp jointly, and that defendant took possession of the land as the purchaser of plaintiff and Shipp. Admits the tender of the balance of the purchase money; but denies a refusal to accept it, and then alleges the tender to defendant of a warranty deed of the land, *executed by plaintiff and wife*, and the demand of the purchase money, which was refused, etc.

Upon the evidence adduced the court gave the following declaration of law at the instance of the plaintiff: "The plaintiff moves the court to declare the law by way of demurrer to defendant's evidence, that under the pleadings, and all the evidence offered, the plaintiff is entitled to judgment for the amount of the notes sued on."

Among the declarations of law given at the instance of the defendant was this one: "It appears from the evidence in this case, that at the date of the execution and tender by plaintiff to defendant of a deed to the lands in controversy, as read in evidence, *the plaintiff was only entitled to an undivided one-half of said lands, and the court, therefore, declares that said deed could not operate as a conveyance of the legal title to the whole.*"

The court found the issues for the plaintiff and gave judgment accordingly, and defendant brings this case here on error.

### OPINION.

I. There is nothing in the point that Shipp transferred this one-half in the notes to third persons, and that they transferred the same to McLeod. If a debtor chooses, he may make his notes to as many persons as he pleases, and each one of these payees may transfer his interest therein to another person; otherwise each payee might have an unmarketable title on his hands. The rule relied on only forbids the transfer by a payee of *portions* of his interest to another, or different payees, and thus render the non-consenting debtor liable to a number of suits, and to additional costs. The debtor, of course, may contract that this debt shall be paid as *integer*, or that it may be paid in *fractions;* but where he contracts in the latter way he cannot object if the payee or payees transfer this fraction or fractions to some one else. The cases of *Love v. Fairfield*, 13 Mo. 301; *Burnett v. Crandall*, 63 Mo. 410; *Beardslee v. Morgner*, 73 Mo. 23; *Loomis v. Robinson*, 76 Mo. 488, do not apply to this case.

II. The defendant was right in asking, and the court wrong in refusing, to make the heir-at-law of

Shipp a party to the suit, and to have him brought in, as the title to one half of the land descended to him, and had to be divested out of him before a good and complete title could be had to the land. In no other way could a perfect title be obtained. And it was the duty of the court, under the statute, if there was a defect of parties, to have secured a complete determination of the controversy by having them brought in by appropriate procedure. *Hayden's Ex'rs v. Marmaduke*, 19 Mo. 403; *Butler v. Lawson*, 72 Mo. 227.

III. The court below, it seems, misconceived the theory of the defendant's answer. He was not *resisting* the payment of the purchase money, nor any part thereof; he had already paid nearly half, and showed in the most pronounced manner his entire willingness, nay his anxiety, to pay the rest; he was simply insisting upon his rights under the contract of sale, the chief of which was a perfect title to the land, to the *whole* title and not to a *half* title. He had the right to get what he bargained for before he paid the residue of the purchase price, and, under the conditions of the title bond, the execution and delivery of a sufficient deed to convey the title, were to be *concurrent* and *contemporaneous* acts; and payment of the purchase money cannot be coerced without the delivery, or at least the tender, of a deed sufficient in all respects to meet and fulfill the requirements of the contract of sale. *Wellman, Adm'r, v. Dismukes*, 42 Mo. 101; *Pershing v. Canfield*, 70 Mo. 140; *Thompson v. Craig*, 64 Mo. 312; *Melton v. Smith*, 65 Mo. *loc. cit.* 323; *Smeich v. Herbst*, 19 Atl. Rep. 950. And, whenever there are two joint obligors in a title bond, nothing less than a deed including and conveying the title of both such obligors will answer the demands of the contract. *Melton v. Smith, supra;* Fry on Specific Performance of Contracts,

202, 329, 334, and cases cited; *Gaither v. O'Doherty*, 12 S. W. Rep. 306.

And the fact that the name of Snyder, the defend-ant, was inserted in the bond as obligor in the place of McLeod's and Shipp's will not affect the right of the defendant, since it is perfectly clear who was intended to be bound, and this is all that equity requires. See *Stow v. Steel*, 45 Ill. 328, cited, *Lincoln v. Thompson*, 75 Mo. *loc. cit.* 642.

IV. For the reasons stated, the case of *Crumb v. Wright*, 97 Mo. 13, has no applicability to the one in hand, and cases like *Mitchell v. McMullen*, 59 Mo. 252; *Connor v. Eddy*, 25 Mo. 75, and *Cooley v. Rankin*, 11 Mo. 643, are equally inapplicable.

Judgment reversed and cause remanded. All concur; BARCLAY, J., specially as stated in a separate opinion.

### SEPARATE OPINION.

BARCLAY, J.—The petition counts upon two notes for $1,333.33 each, signed by defendant, dated May 26, 1883, payable respectively on or before December 1, 1885, and at a corresponding date in 1886, to the order of McLeod (plaintiff) and Shipp, for value received; and regular assignments thereof to plaintiff.

The answer presents the defense indicated later on, and the reply thereto need not be specially noted.

The case is practically an agreed one. The con-trolling facts are mutually admitted, and only questions of law remain.

It appears that these two notes were part of a series of four, of the same date, due at different inter-vals, viz.: The first for $500, payable December 1, 1883; the second, for $1,333.33, December 1, 1884; and the

others (those in suit) for like amounts, maturing respectively in 1885 and 1886, as above indicated.

These notes were made pursuant to the terms of a bond for a deed, executed, acknowledged and delivered at the same time, by McLeod and Shipp to defendant, and in consideration thereof. By the terms of this bond, McLeod and Shipp became bound to defendant in the sum of $4,500, upon condition that, if they, the said obligors, "upon payment" thereof by defendant, "agreeably" to the four notes mentioned (representing the purchase price), should convey to defendant certain (particularly described) land in Chariton county, Missouri, by general warranty "deed or deeds in common form, duly executed and acknowledged," and, in the meantime, should permit him "to occupy and improve said premises for his own use," then the bond should be void; otherwise in full force.

The point of defendant's resistance to paying the notes, yet due, appears from certain other facts.

After the bond and notes were exchanged for each other, Shipp sold his interest in the notes to third parties, who, in turn, transferred that interest to plaintiff. These transfers were in due form, in writing, upon the notes themselves. Thereafter, shortly before this litigation began, Shipp died. He left a widow and minor child, and his estate was in course of administration in the probate court of Chariton county while this cause was pending in the circuit court.

Defendant went into possession of the land, after receiving the bond for a deed, and has been in possession ever since.

Plaintiff and Shipp were the record owners (in equal parts) of the title to the land when the bond was given, and defendant assigns no flaw in the title they held.

Since the death of Shipp, plaintiff has offered to defendant a warranty deed by plaintiff and wife, in due form, conveying the property; but defendant claims that such a deed is not a full compliance with the condition of the bond, inasmuch as the interest of Shipp is not thereby transferred to him. He asserts that he is not bound to pay either of these notes, representing the last two installments of the purchase money, until tendered or decreed a conveyance of the legal title of both Shipp and plaintiff. But he has tendered and paid into court for the plaintiff the amount called for by the notes upon the condition of compliance, on the plaintiff's part, with the terms of the bond for title which he demands in his answer. He also prays therein that the widow, administrator and heir-at-law of Shipp be made parties, and that the court will make such orders and decrees in the premises as may be just.

The cause was tried by Judge BURGESS without a jury, and, at the close of the testimony, he declared the law to be that, under the pleadings and evidence, plaintiff was entitled to recover the amount of both notes. After judgment to that effect defendant brought the case here.

I. We all agree as to the true construction and effect of the bond for a deed in this case, and as to plaintiff's complete legal title to the notes in suit.

II. But it seems to me that the facts, discussed in the foregoing opinion, do not constitute any defense whatever to the first of the notes in suit, namely, the one maturing in 1885, on which the cause of action separately stated in the first count of the petition is based.

As to the last of the series of purchase money notes (that falling due in 1886) sued on in the second count, the agreements for its payment and for a trans-

VOL. 110—20

fer of the title, contemplated in the bond for a deed, are properly ruled as dependent; but, as to the prior note, due in 1885, defendant's obligation to pay was independent and imperative. While he retained possession of the property and expressly refused to rescind the contract or to surrender the possession, it seems to me he was bound to pay all the installments of purchase price, except the last one, absolutely. *Kane v. Hood* (1832), 13 Pick. 281; *Duncan v. Charles* (1843), 5 Ill. 561; *Terry v. George* (1859), 37 Miss. 539.

In my opinion, upon reversing the judgment, the finding on the first count should be affirmed; and the cause should then proceed, as to the second count, in accordance with the views expressed in the opinion of the court. That practice was adopted in *Boeger v. Langenberg* (1889), 97 Mo. 390, and appears to me proper in this case.