William "Bill" HUNT, Plaintiff-Respondent,

v.

James EASLEY, Defendant-Appellant.

No. 34587.

Missouri Court of Appeals,
St. Louis District,
Division One.

May 22, 1973.

Motion to Modify Opinion and Rehearing Denied June 8, 1973.

Colson & Wagner, Farmington, for defendant-appellant.

Roberts & Roberts, V. Kenneth Rohrer, Farmington, for plaintiff-respondent.

DOWD, Chief Judge.

Plaintiff filed a petition praying for an injunction requiring defendant to increase the capacity of the septic system servicing defendant's house trailers and for $10,000. Defendant filed a counterclaim for an injunction requiring plaintiff to correct his septic system and for $10,000. From a judgment granting plaintiff's petition for injunction, defendant appeals.

The evidence in this court tried case showed that the plaintiff owns 2 or 2½ acres of land in St. Francois County west by southwest of defendant's property. The plaintiff and defendant have approximately 100 feet of common property line. All of

the property involved slopes west by southwest. The plaintiff lives there with his wife in a double mobile home with a 750 gallon septic tank and 190 feet of perforated field tile. The plaintiff's sewer line is vented by running a 3″ pipe into a 4″ pipe.

The defendant owns 5 lots, each 40 feet wide, running north to south. There is a mobile home on each of the 5 lots. On each of 4 of the lots, the defendant has a septic tank with a 305 gallon capacity with 30 feet of field tile running from each tank and tied into a single 120 feet trunk line consisting of perforated field tile. This single trunk line ran in a north-south direction approximately 6 to 11 feet immediately east of the common boundary line between plaintiff's and defendant's property. The mobile home on the 5th lot did not have a septic tank but used the septic tank located on lot 4.

Plaintiff testified that he had no problems with his septic system prior to the time that defendant put the trailer on the fifth lot. After the addition of the fifth trailer, plaintiff's system began to back up. Plaintiff dug a hole on his land in an attempt to eliminate this problem. That hole was approximately eight feet long, four feet wide, and three feet deep and was located near the end of plaintiff's field tile. This hole continually fills with sewage water which is black in color and has a rank odor. Plaintiff testified that there is build-up in the hole when all the occupants of his trailer are away and his septic system is not in use. To get rid of the sewage water which builds up in this hole, plaintiff installed a pump. The pump discharges this water either into a ditch bordering his property or onto his bushes. In addition, the part of plaintiff's property which is near to defendant's is soft and muddy from the excess water coming onto it.

Plaintiff's witness, William Rumburg testified that he had 31 years of experience in sewage disposal systems in his work with the University of Missouri Extension Division. He had originally staked out defendant's septic system. In the summer of 1970, Mr. Rumburg observed defendant's septic system. He saw a cesspool arrangement on defendant's property by which defendant would collect excess water and pump it to a ditch. He also testified that the water being pumped by defendant's sump pump was off-color and had an odor.

Upon being questioned on venting a septic system, Mr. Rumburg stated that every system needed an adequate vent to relieve the odor and pressure from gas build-up in the system. This gas build-up could back sewage into the trailer. He stated that the method of the venting utilized by plaintiff is one of the ways used but he preferred not to comment on its adequacy. Mr. Rumburg said he recommended a 750 gallon system with 100 feet of drain tile as a minimum for a mobile home. That size system would accommodate a family of four. He also stated that a curtain wall would have no effect on water moving from defendant's property to plaintiff's property.

Defendant testified that he had purchased four lots and installed the septic systems prior to purchasing the fifth lot. The occupancy of defendant's trailers consisted of seven persons at the time this suit was filed; however, on other occasions more people had lived there. At the time of taking depositions, nine people lived in these trailers. Defendant stated that he had discussed the problem of black water on plaintiff's property with the Superintendent of Sewers of Farmington, and after this conversation, defendant installed a sump pump to carry off the excess surface water. The pump discharged into the drainage ditch into which plaintiff was also pumping. Later, after talking with the city engineer, defendant installed a curtain wall and an additional 100 feet of drain tile. He then diverted the sump pump discharged from the drainage ditch to the new 100 feet of tile. This additional field tile was never tied into the existing septic system.

Harold Johnson testified that he had been installing septic systems for eight years, and he installed defendant's additional 100 feet of drain tile but did not tie it into defendant's existing septic system. This additional 100 feet of drain tile is tied into defendant's sump pump. Mr. Johnson rents space on his property for six trailers. He recommends a septic tank with a minimum capacity of 750 gallons and 100 feet of field tile for a family. After having plaintiff's venting arrangements described to him, Mr. Johnson testified that it would act as a vent but would not be the type of vent he would recommend or install.

John McMillian, plaintiff's neighbor, testified that he has installed several septic tanks in this area. He also testified that plaintiff's problem began after the addition of defendant's fifth trailer. He stated that on one occasion about 1½ years ago before the trial he saw black sewage water running from defendant's property onto plaintiff's property. This sewage water was coming from the defendant's field drain. This water had a bad odor. The odor problem continued for two years. McMillian also testified that the hole on plaintiff's property fills even when the plaintiff and his family are gone on vacation. The water in the plaintiff's hole is quite odorous.

Then McMillian's wife also testified that she had noticed a sewer type odor starting about 2 years before the trial and had also seen the defendant pumping water into a ditch which was odorous. She could detect this odor up to the time of trial. The water in the hole on plaintiff's property also smelled.

Plaintiff's wife testified that she had called defendant to discuss the problem, and he said he would take care of it.

In addition to his own testimony, defendant produced only one witness, Velvie Kennon. Mr. Kennon's testimony consisted of the fact that he had hauled gravel to defendant's property.

At the close of all the evidence, the judge asked both parties to submit proposed findings of fact and conclusions of law. The court adopted plaintiff's findings which consisted, in part, of the following:

(1) The uncontradicted facts as to the location of plaintiff's and defendant's property and the sizes of their respective septic systems;

(2) That defendant was allowing sewage water to drain into plaintiff's property and was discharging sewage to a ditch bordering on plaintiff's property;

(3) That defendant was notified of plaintiff's problem and installed the additional 100 feet of drain tile and the curtain wall;

(4) That the hole on plaintiff's property filled with black, odorous water even when plaintiff and his family were not at home;

(5) That there was no source for this sewage water other than defendant's trailers and septic system;

(6) That the fact that defendant must pump surface water and the muddy condition of that portion of plaintiff's land located close to defendant's property indicates that defendant's septic system is inadequate for the use;

(7) That seven people lived in the trailer at the time of the trial although nine had lived there when the depositions were taken;

(8) That the minimum size of the septic system for any one dwelling should consist of a 750 gallon tank and 100 feet of field tile;

(9) That plaintiff is entitled to the injunctive relief requested.

Based on these findings, the court ordered defendant to install a 750 gallon tank and 100 feet of field tile for each trailer on his property. Defendant appeals from this judgment.

Our review of this court tried equity case is on both the law and the evidence. We review all competent evidence and enter such judgment as the trial court should have entered. Due deference must, however, be given the trial court to judge the credibility of the witnesses, and its judgment will not be set aside unless clearly erroneous. Rule 73.01(d) [1]; Biggs v. Moll, 463 S.W.2d 881 (Mo.1971).

Likewise, wide latitude in the admission of evidence is permitted in a court tried case. Mashak v. Poelker, 367 S.W.2d 625 (Mo. banc 1963). In reviewing such cases, " * * * we do not consider errors as such in the admission or exclusion of evidence, but we arrive at out conclusions by considering only the evidence which is properly admissible." Govro v. Beyer, 385 S.W.2d 367 [3], (Mo.App.1964).

Defendant contends, in part, that the trial court erred (1) in refusing to strike certain evidence; (2) in admitting into evidence a copy of a letter; and, (3) in that the court's findings of fact are not supported by the evidence. While some of defendant's points fail to comply with Rule 84.04, we will nevertheless dispose of them on the merits.

We feel it unnecessary to discuss at length defendant's allegations questioning the admissibility of certain evidence. We have chosen to eliminate that evidence (without deciding its admissibility) in that it was unnecessary for determination of the issues in this case, and that evidence has not been included anywhere in our statement of facts. We feel that, as set out above, there is sufficient evidence to support the findings and judgment of the trial court. Defendant points to minor discrepancies within the trial court's findings which do not destroy its ultimate conclusion. The trial court found that defendant's septic system is inadequate and this inadequacy affects plaintiff's use and enjoyment of his land entitling plaintiff to injunctive relief. We cannot say its judgment was clearly erroneous. Rule 73.01.

Defendant's next contention is that it was error for the trial court to grant plaintiff affirmative relief arguing that plaintiff was not without fault. It is true that plaintiff had pumped sewage water off his property into the same ditch as defendant and had pumped from the hole in his yard onto his shrubs. Defendant claims that equity will not permit a party to complain of acts of others when they are committing the same act, and therefore, plaintiff is not entitled to relief.

It appears to us that the defendant is invoking the equitable maxim that "he that comes into equity must come with clean hands." This maxim is, however, of no aid to defendant.

The evidence clearly indicates that these actions by plaintiff were taken to alleviate the condition resulting from the conduct of the defendant. In addition, there is no evidence that the acts of which the defendant complains were in any way damaging to defendant. There is no showing that plaintiff is guilty of any unlawful or inequitable conduct in the matter with relation to which he seeks relief and such a showing is required in order to bar relief under the clean hands doctrine. Shrout v. Tines, 260 S.W.2d 782, 786 (Mo.App.1959).

Also, in order to justify the application of the clean hands doctrine, the party invoking application must show that he himself has been injured by the conduct of which he is complaining. As said, there is no such showing here. Price v. Ridler, 373 S.W.2d 59, 62 (Mo.1963). This contention is destitute of merit.

Defendant's final assertion is that the court erred in that plaintiff failed to join an indispensable party. Defendant, for the first time in this litigation, alleges that he and his wife own the property as

I. All references to rules are to RSMo 1969, V.A.M.R.

tenants by the entirety, and therefore, defendant's wife is an indispensable party. Defendant's position is, however, contradicted by his own testimony at trial. In response to all questions concerning the ownership of both the land and the trailers, defendant indicated that he was their sole owner. He now seeks to capitalize on his misleading responses.

The general rule is that a party waives his claim of defect of parties by failing to raise his claim by motion or answer. Ray v. Nethery, 255 S.W.2d 817 (Mo.1953); Lamb v. New York Life Ins. Co., 377 S. W.2d 148 (Mo.App.1964). Both the cases cited were declaratory judgment actions which show the application of this rule to cases tried without a jury. And while it appears that some deviation from this general rule has occurred, it is recognized that an objection for nonjoiner may not be raised for the first time in the appellate court where the complaining party is himself responsible for the defect. Shepherd v. Department of Revenue, 377 S.W.2d 525, 528 (Mo.App.1964). We feel that defendant's misleading responses reinforce our opinion that he has waived any objection he may have had based on defect of parties.

In addition, while the courts have recognized the necessity of bringing an action to abate a nuisance against the owner of the fee, this is not required where the presence of the owner is not necessary for a complete determination of the controversy. State ex rel. Ely v. Bandall, 220 Mo. App. 1222, 299 S.W. 155 (1927). From the record, it appears that the defendant was the only party necessary for a complete determination of this controversy.

We hold that it was not error for the trial court to enter judgment for plaintiff against defendant even though defendant's wife was not joined.

The trial court ordered defendant to install a 750 gallon septic tank for each trailer and to have 100 feet of drain tile per trailer. We feel this to be excessive and not warranted by the evidence in the case.

The evidence shows that plaintiff's problems began after the addition of the fifth trialer. This leads to the conclusion based on the evidence as to the current occupancy that the existing septic system consisting of the four 305 gallon tanks and the 240 feet of field tile is adequate to service the four original trailers. We believe, therefore, that plaintiff's relief should consist of an order directing defendant to install a septic system for the fifth trailer. The size of the additional system should be equal to that proposed by plaintiff's expert witnesses which is a 750 gallon tank and 100 feet of drain tile.

Except for the foregoing which concerns only the extent of the relief granted plaintiff the judgment is affirmed. We remand the case with directions to enter judgment for plaintiff consistent with this opinion.

WEIER, CLEMENS and McMILLIAN, JJ., concur.